IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| JERRY W. LEWIS,<br>33026 Stony Creek Road<br>New Church, VA 23415<br><br>    *Plaintiff,*<br><br>v.<br><br>TWO FARMS, INC. d/b/a ROYAL FARMS<br>33620 Chincoteague Road<br>Wallops Island, VA 23337<br>  **SERVE: TRAC**<br>      201 N. Union Street, Suite 230<br>      Alexandria, VA 22314<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.:_____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jerry W. Lewis ("Mr. Lewis") through counsel files this Complaint against his former employer, Two Farms, Inc. d/b/a Royal Farms ("Royal Farms") under the Americans with Disabilities Amendments Act of 2008, 42 U.S.C. § 12101 *et seq.* ("ADAAA") and the Family Medical Leave Act, 29 U.S.C. § 2615(a) ("FMLA"). Mr. Lewis seeks awards of compensatory damages, punitive damages, attorneys' fees and costs.

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §1331 in that this action asserts violations of rights secured by laws of the United States, specifically, the ADAAA and the FMLA.

2. Venue is proper in this Court in accordance with 28 U.S.C. § 1391(b), as this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

3. Prior to bringing this action, Mr. Lewis timely filed an administrative charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia,* disability discrimination. The EEOC granted Mr. Lewis a "right to sue notice" on October 14, 2016, a copy of which is attached as **Exhibit A**. He files this suit within ninety (90) days of the issuance of the Notice of Right to Sue.

## PARTIES

4. Mr. Lewis, age 63, is a resident of New Church, Accomack County, Virginia. He was, at all relevant times, employed by Royal Farms at one of its gas station and convenience stores located at 33620 Chincoteague Road, Wallops Island, Accomack County, Virginia.

5. Royal Farms is a corporation formed under the laws of Maryland and operates gas station and conveniences stores throughout Maryland, Delaware, Virginia, and Pennsylvania. It employs 50 or more employees within a 75-mile radius of the Wallops Island Royal Farms' store. It is an "employer" under both the ADAAA and FMLA.

## FACTS COMMON TO ALL COUNTS

6. The facts alleged above are incorporated by reference.

7. Mr. Lewis was employed by Royal Farms as a Deli Cook from March 30, 2011 to January 27, 2016.

8. Mr. Lewis' primary duties as Deli Cook were frying chicken, cooking breakfast sandwiches, and keeping the kitchen equipment clean and serviceable.

9. Throughout his employment, Mr. Lewis was never disciplined and performed his job well.

10. Mr. Lewis customarily worked the overnight shift (11:00 p.m. to 7:00 a.m.) with Lisa Cypress, who worked the cash register. The store manager, George Thompson, referred to Mr. Lewis and Ms. Cypress as his "dream team."

11. On March 1, 2015, Mr. Lewis was rushed to the Emergency Room of Peninsula Regional Medical Center from his home because he could not breathe. Mr. Lewis was admitted and hospitalized for one week while doctors managed his breathing.

12. While in the hospital, Mr. Lewis was diagnosed with Chronic Obstructive Pulmonary Disease ("COPD"), which is a progressive disease that makes it hard to breathe. COPD can cause coughing that produces large amounts of mucus, wheezing, shortness of breath, chest tightness, and other symptoms that make it difficult to breathe or talk, affect mental alertness, and cause an increased heartbeat.

13. Mr. Lewis' wife, Dawn Lewis, called Mr. Thompson, the Royal Farm's store manager, to inform him that Mr. Lewis would not be reporting to work because he was hospitalized for "breathing problems."

14. Mr. Thompson, Ms. Cypress, and the assistant store manager, Esther Nicholson, visited Mr. Lewis in the hospital.

15. Mrs. Lewis remained in constant communication with Mr. Thompson to give him updates on Mr. Lewis' medical condition as he convalesced.

16. Mrs. Lewis also spoke to Royal Farm's Human Resource's Office in Baltimore, Maryland about Mr. Lewis' medical condition and his need for leave from work.

17. Royal Farms granted Mr. Lewis medical leave from March 1, 2015 until March 19, 2015 for his COPD.

18. Mr. Lewis returned to work on March 19, 2015 and was able to perform the essential functions of his job.

19. Despite compliance with his medication regime, Mr. Lewis suffered from COPD exacerbation, which is an event in the natural course of the disease characterized by a change in the sensation of shortness of breath.

20. When Mr. Lewis suffers from COPD exacerbation, he experiences extreme difficulty, walking, talking, standing, bending, or lifting.

21. Mr. Lewis was hospitalized for two nights in May 2015 for his COPD.

22. Mrs. Lewis made Mr. Thompson aware that Mr. Lewis had been hospitalized again for COPD.

23. Around the same time Mr. Lewis was admitted to the hospital in May, he experienced an intensification of his symptoms while at work to the point that he had difficulty standing. On that particular night he was working with Ms. Cypress, who encouraged Mr. Lewis to leave his shift early and go home.

24. Mr. Thompson arrived at the store shortly thereafter at 5:00 a.m. Ms. Cypress reported to Mr. Thompson that Mr. Lewis had extreme difficulty breathing and had left work early.

25. Mr. Thompson, who was aware that Mr. Lewis suffered from COPD, made no objection to Mr. Lewis leaving work early.

26. Between May 2015 through the end of December 2015, Mr. Lewis left work early on three other occasions because of COPD exacerbations. On one of those occasions, Mr. Lewis' was having so much troubling breathing that Ms. Cypress called Mrs. Lewis to pick up Mr. Lewis because he was not physically able to drive.

27. At no time did Mr. Thompson reprimand Mr. Lewis for leaving work early or tell him he could not leave work early when he was experiencing COPD exacerbation.

28. At no time did Mr. Thompson require Mr. Lewis to produce a doctor's note for leaving work early or tell him that he needed to make a verbal or written request for an accommodation in writing.

29. Mr. Lewis and Mr. Thompson had an agreement that, if Mr. Lewis was physically unable to continue his shift because of his COPD, Mr. Lewis could leave work early.

30. Mr. Thompson did not impose a requirement that Mr. Lewis call him before leaving work as a pre-condition of granting the leave.

31. Mr. Lewis did not abuse the accommodation afforded to him by Mr. Thompson. In a ten month period, Mr. Lewis left work early on only four (4) occasions. Before leaving work, Mr. Lewis made great efforts to finish virtually all of his duties except for making breakfast sandwiches.

32. Mr. Lewis was again hospitalized in December 2015 for two nights because of his COPD.

33. Mr. Thompson was aware of Mr. Lewis' hospitalization.

34. Effective mid-January 2016, Mr. Thompson was replaced by Cyrus Warren, who had previously served as assistant manager of the Royal Farms store in New Church, Virginia.

35. On January 26, 2016, Mr. Lewis experienced a COPD exacerbation and left work early at around 2:20 a.m.

36. Before deciding to leave work, Mr. Lewis sat in the chair in the manager's office, which is the only chair in the store, to try to catch his breath. When he was unable to catch his breath, Mr. Lewis left work. The short walk to Mr. Lewis' truck caused Mr. Lewis' symptoms

to intensify to the point Mr. Lewis had to sit in his truck for twenty (20) minutes before driving away.

37. Mr. Lewis reported to work the following night, January 27, 2016 dressed and ready to work. Immediately after walking into work, Mr. Lewis was instructed to pick up the telephone in the office. Mr. Warren was on the line and curtly told Mr. Lewis that he was "terminated" and hung up the phone without any explanation.

38. Mr. Lewis had no idea why he had been terminated, but left the premises without incident.

39. Mr. Lewis later called Mr. Warren seeking an explanation for his termination. Mr. Warren told Mr. Lewis that he had been terminated for leaving his shift early.

40. When Mr. Lewis began to protest by explaining he had permission to leave work early when he experienced COPD exacerbation, Mr. Warren told him that he "didn't care if he was having a heart attack" and that he was required to call him (Mr. Warren) before leaving work early.

41. Mr. Lewis had never been told by Mr. Warren or any Royal Farms' managerial employee that he needed to call the manager before leaving work when he was experiencing COPD exacerbation.

42. Mr. Thompson was aware Mr. Lewis had left work because of COPD exacerbation but terminated him nonetheless.

43. Royal Farms was aware that Mr. Lewis suffered from COPD and was under continuing doctor care.

44. Mr. Lewis has learned that his replacement, a female by the name of Theresa, regularly leaves work early without notifying the store manager, and, to Mr. Lewis' knowledge, she has not been disciplined.

45. As a result of Mr. Lewis' termination, he has lost pay and benefits and has suffered emotional distress accompanied by physical symptoms.

46. Royal Farms' discrimination of Mr. Lewis was committed with malice toward, or a reckless indifference, to his statutorily protected rights

## CAUSES OF ACTION
### COUNT I -- ADAAA: Failure to Accommodate

47. The facts alleged above are incorporated by reference.

48. Mr. Lewis' COPD is a physical impairment that substantially limits one or more of his major life activities, including breathing, walking, talking, and cooking.

49. Royal Farms had notice Mr. Lewis suffered from COPD and that his condition periodically worsened.

50. With reasonable accommodation, such as permitting the use of paid or unpaid leave when necessitated by Mr. Lewis' COPD, Mr. Lewis could perform the essential functions of his job, including frying chicken, cooking breakfast sandwiches, and cleaning kitchen equipment.

51. At the time Mr. Warren terminated Mr. Lewis, Royal Farms failed to accommodate Mr. Lewis as it had done in the past without incident.

## COUNT II -- ADAAA: Disability Discrimination

52. The facts alleged above are incorporated by reference.

53. Before and after his disabling condition, Mr. Lewis was performing his job at a level that met Royal Farm's legitimate expectations.

54. Royal Farms terminated Mr. Lewis because of his disability.

## COUNT III -- FMLA DENIAL AND INTERFERENCE WITH RIGHTS

55. The facts alleged above are incorporated by reference.

56. Mr. Lewis was entitled to intermittent leave under the FMLA on January 26, 2016 for his serious health condition.

57. Mr. Warren interfered with Mr. Lewis' FMLA leave by terminating him for leaving work early during the early morning of January 27, 2016.

58. Mr. Lewis gave at least verbal notice sufficient to make Royal Farms aware that he needed FMLA-qualifying leave, as evidenced by the fact Mr. Thompson permitted Mr. Lewis to leave work early when he was experiencing CODP exacerbation.

59. Royal Farms was required to notify Mr. Lewis formally of his rights under the FMLA, but failed to do so. Consequently, Mr. Lewis' need for leave was addressed informally by Mr. Thompson and Mr. Lewis.

## CLAIMS FOR RELIEF

Mr. Lewis asks this Honorable Court to grant the following relief:

A. Enter an award of compensatory and punitive damages in favor of Plaintiff and against Defendant for its violation of the ADAAA;

B. Enter an award of damages in favor of Plaintiff and against Defendant for its violation of the FMLA in the amount of any wages, employment benefits, or other

---

compensation that Plaintiff lost as a result of his termination, and liquidated damages equal to twice the sum of his total economic loss;

C. Enter an injunction commanding Defendant to reinstate Plaintiff or, in the alternative, to compensate him for his lost future wages or "front pay;"

D. Award reasonable attorneys' fees and costs of suit in favor of Plaintiff and against Defendant;

E. Grant Plaintiff such other and further relief as the nature of his cause may warrant.

## ELECTION OF JURY TRIAL

Plaintiff, through counsel. elects and demands a trial by jury on all issues and counts in this action.

January 5, 2017

JERRY W. LEWIS

John R. Ates, Esquire
1800 Diagonal Rd., Ste 600
Alexandria, VA 22314
703-647-7501
703-229-6430 (fax)
j.ates@ateslaw.com
*Counsel for Plaintiff Jerry Lewis*

Of Counsel:
Robin R. Cockey, *Pro Hac Vice* pending
Ashley A. Bosché, *Pro Hac Vice* pending
Cockey, Brennan & Maloney, P.C.
313 Lemmon Hill Lane
Salisbury, Maryland 21801
Telephone: (410) 546-1750
Facsimile: (410) 546-1811
rresq@cbmlawfirm.com
bosche@bcmlawfirm.com

EXHIBIT A to Complaint and Demand for Jury Trial

EEOC Form 161 (11/09) **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

To: Jerry W. Lewis
33026 Stony Creek Road
New Church, VA 23415

From: Washington Field Office
131 M Street, N.E.
Suite 4NW02F
Washington, DC 20507

☐ On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 531-2016-01140 | Alan W. Anderson, Deputy Director | (202) 419-0756 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

- **NOTICE OF SUIT RIGHTS** -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*[signature]*
For Mindy E. Weinstein,
Acting Director

OCT 14 2016
(Date Mailed)

Enclosures(s)

cc: Kitty Fields
Employee Relations at Royal Farms
ROYAL FARMS / DBA TWO FARMS INC.
3611 Roland Avenue
Baltimore, MD 21211

Robin R. Cockey, Esq.
COCKEY, BRENNAN & MALONEY, P.C>
Attorneys & Counselors At Law
313 Lemmon Hill Lane
Salisbury, MD 21801

EXHIBIT A